# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

CAROLYN ANGEL,
Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
Defendant

Case No. 1:06-cv-857
(Spiegel, J.; Hogan, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff brings this action pro se pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's applications for disability insurance benefits (DIB) and Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Fact Sheet and Statement of Errors (Docs. 14, 15) and the Commissioner's memorandum in opposition. (Doc. 16).

## PROCEDURAL BACKGROUND

Plaintiff, Carolyn Angel, was born in 1954, and was 51 years old at the time of the ALJ's decision. Plaintiff has the equivalent of a high school diploma. Her past work history included a job as a housekeeper in a medical setting. Plaintiff filed applications for DIB and SSI in September 2003, alleging disability since December 2002 due to panic attacks, depression, back pain, and muscle spasms. Plaintiff's applications were denied initially and upon reconsideration. Plaintiff requested and was granted a de novo hearing before an ALJ. In August 2005 and

October 2005, plaintiff, who was represented by counsel, appeared and testified at hearings

before ALJ Sarah Miller. A vocational expert (VE) also testified at the October 2005 hearing.

On December 27, 2005, the ALJ issued a decision denying plaintiff's DIB and SSI

applications. The ALJ determined that plaintiff suffers from severe impairments of chronic

muscle strain/sprain, obesity, tachycardia, traumatic and degenerative joint disease with chronic

low back pain, hypertension, anxiety disorder, and depressive disorder not otherwise specified.

(Tr. 25). Despite plaintiff's severe impairments, the ALJ found her impairments do not meet or

equal the Listing of Impairments. (Tr. 25). According to the ALJ, plaintiff retains the residual

functional capacity (RFC) for less than the full range of medium work: she can lift, carry, push,

and/or pull 50 pounds occasionally and 25 pounds frequently; stand/walk about six hours, and sit

for about six hours; never climb ladders, ropes, or scaffolds; and only occasionally kneel, crouch,

or crawl. (Tr. 26). The ALJ also determined that plaintiff has mild limitations in the ability to

maintain attention and concentration, relate adequately to others in the work setting, and cope

with routine job stress. (Tr. 26). Given these limitations, the VE testified that plaintiff could

perform her past relevant work. (Tr. 64-67). Based on this testimony and evidence from the

Dictionary of Occupational Titles showing work as a housekeeper in a medical setting is

normally performed at medium levels of exertion, the ALJ determined that plaintiff is able to

perform her past relevant work. (Tr. 25, 26). Consequently, the ALJ concluded that plaintiff is

not disabled under the Act, and therefore not entitled to DIB or SSI. Plaintiff's appeal to the

Appeals Council was denied, making the ALJ's decision the final decision of the Commissioner.

2

**APPLICABLE LAW**

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for disability insurance benefits, plaintiff must meet certain insured status requirements, be under age 65, file an application for such benefits, and be under a disability as defined by the Social Security Act. 42 U.S.C. §§ 416(i), 423. Establishment of a disability is contingent upon two findings. First, plaintiff must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). Second, the impairments must render plaintiff unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental

impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

A severe impairment or combination of impairments is one which significantly limits the

4

physical or mental ability to perform basic work activities. 20 C.F.R. §404.1520(c). Basic work

activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to

perform physical functions, the capacity for seeing and hearing, and the ability to use judgment,

respond to supervisors, and deal with changes in the work setting. 20 C.F.R. §404.1521(b).

Plaintiff is not required to establish total disability at this level of the evaluation. Rather, the

severe impairment requirement is a threshold element which plaintiff must prove in order to

establish disability within the meaning of the Act. *Gist v. Secretary of H.H.S.*, 736 F.2d 352, 357

(6th Cir. 1984). The severity requirement may be employed as an administrative convenience to

screen out claims that are totally groundless solely from a medical standpoint. *Higgs v. Bowen,*

No. 87-6189, slip op. at 4 (6th Cir. Oct.28, 1988). An impairment will be considered nonsevere

only if it is a "slight abnormality which has such minimal effect on the individual that it would

not be expected to interfere with the individual's ability to work, irrespective of age, education,

and work experience." *Farris v. Secretary of H.H.S.*, 773 F.2d 85, 90 (6th Cir. 1985)(citing

*Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984)). The Secretary's decision on this issue

must be supported by substantial evidence. *Mowery v. Heckler*, 771 F.2d 966 (6th Cir. 1985).

     Plaintiff has the burden of establishing disability by a preponderance of the evidence.

*Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v.*

*Richardson*, 438 F.2d 1181 (6th Cir. 1971). Plaintiff may establish a prima facie case of

disability by showing an inability to perform relevant previous employment. If plaintiff retains

the residual functional capacity to perform the physical and mental requirements of work

performed in the past, plaintiff is not disabled. 20 C.F.R. § 404.1520(e).

     Plaintiff must prove an inability to return to his or her former type of work and not just to

5

his or her particular former job. *Studaway v. Secretary of HHS*, 815 F.2d 1074, 1076 (6th Cir. 1987), citing *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986). "Former type" of work means the general kind of work, *e.g.*, janitorial work, that plaintiff used to perform. *Studaway*, 815 F.2d at 1076. In other words, the ALJ must consider whether the claimant can perform the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Garcia v. Secretary of Health and Human Services*, 46 F.3d 552, 557 (6th Cir. 1995), citing Social Security Ruling 82- 61. The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally a sufficient basis for a finding of "not disabled." Social Security Ruling 82-62.

Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human*

6

*Services*, 820 F.2d 768, 771 (6th Cir. 1987).

## HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff testified that she stopped working as a housekeeper in December 2002 and worked briefly for a temporary service after she quit her housekeeper job. (Tr. 36). Plaintiff's medications included a muscle relaxant, high blood pressure medication, and medication for depression; she claimed drowsiness as a side effect. (Tr. 37-38). She saw her internist as needed, a counselor twice a month, and Dr. David, a psychiatrist, every three months unless a crises required more frequent visits. (Tr. 38-39). Plaintiff testified she was unable to work due to panic attacks, depression, low back pain, and muscle spasms in her neck. (Tr. 39-40). Plaintiff took naps throughout the day, but was able to clean, dust, mop, do dishes, shop and do the laundry. (Tr. 40-41). She drove a car, walked in the park once a week, and watched television. (Tr. 41-42).

Plaintiff testified that she could lift six-to-seven pounds, sit for 30 minutes, stand for 20 minutes, and walk at least eleven and one-half blocks, a couple of blocks at a time, before she required rest breaks. (Tr. 43, 46-47). Though she alleged difficulty with climbing stairs, plaintiff testified she had to climb 53 steps to get to her apartment. (Tr. 43, 47). She alleged balance problems, trouble using her hands and arms, and memory problems; she had difficulty being around strangers and with stress. (Tr. 44). Plaintiff occasionally (once a month) played computer games at a club, and went out for dinner; she also enjoyed watching DVDs. (Tr. 58).

### Physical Impairments

In November 2001, plaintiff was seen as a new orthopedic patient at Group Health

7

Associates. She reported she had back pain for years and injured her back after lifting "heavy bags of linen and trash" at work. (Tr. 169). In May 2002, plaintiff was seen for a follow-up for her back; she was returned to work with light duty for two weeks. (Tr. 174). A right hip x-ray showed mild degenerative changes while lumbosacral spine x-rays showed normal disc spaces, minimal dextroscoliosis (right sided deformity/curvature of the spine), and was otherwise normal. (Tr. 187). In June 2002, plaintiff had negative straight leg raising, 1+ reflexes, and 5/5 (normal) strength. (Tr. 175).

In July 2002, Dr. Matthew Merz examined plaintiff's back after a referral from plaintiff's physician Dr. Brown. (Tr. 191). Plaintiff reported back pain for approximately one year and that she may have injured her back lifting a patient at work. She reported some chiropractic treatment but no physical therapy for pain. She took a muscle relaxant which "seems to help." She also reported her pain was reduced when sitting or standing. (Tr. 176, 191). Physical examination revealed that plaintiff was obese, had no tenderness over the spinous processes but moderate tenderness and spasm in the lumbosacral paraspinal muscles; no discrete trigger points; no acute joint inflammation; slightly impaired lumbar range of motion; negative straight leg raising; and normal reflexes and strength. (Tr. 191-92). Dr. Merz referred plaintiff for physical therapy. (Tr. 192, 198-99).

In August 2002, plaintiff was given permission to return to work with the following restrictions for four weeks: no lifting over 10 pounds; no bending or stooping; no standing more than 30 minutes without a five-minute break; no climbing ladders; and no overhead lifting. (Tr. 178).

Dr. Merz examined plaintiff on September 6, 2002, and noted that she had "dramatic

improvement" in her pain with physical therapy and medication. (Tr. 194). She was "significantly improved" with "minimal residual tenderness and spasm" and no neurologic abnormality. (Tr. 194).

In September 2003, plaintiff presented to the emergency room for chronic back pain. (Tr. 333). Physical examination was essentially normal and she was assessed with low back pain. (Tr. 333-34). Plaintiff was given a return to work date on September 20, 2003, with lifting limited to no more than 20 pounds. (Tr. 335).

On October 23, 2003, Dr. Fritzhand consultatively examined plaintiff for the state agency. (Tr. 246). Plaintiff stated she always had back pain, but two and one-half years earlier, she heard "snaps" while lifting a heavy linen bag. (Tr. 246). Plaintiff stated she had received no medical care for her back for more than one year and was taking Tylenol as needed. (Tr. 246). Plaintiff reported that she was "doing housekeeping and restaurant work at this time." (Tr. 246). Plaintiff walked normally and neurologic examination was essentially normal. (Tr. 247). Plaintiff had no weakness in her legs, and sensation was well preserved; she had some diminished spinal range of motion; and straight leg raising was "slightly diminished" on the left and normal on the right. (Tr. 247, 250-53). Plaintiff could bend forward without difficulty. (Tr. 248). She had no joint abnormalities, brisk reflexes, no muscle atrophy, and well-preserved grip strength. (Tr. 248, 250-53). Dr. Fritzhand concluded that plaintiff was capable of performing a moderate amount of walking, standing, bending, stooping, and lifting heavy objects. (Tr. 248).

A lumbar spine x-ray in October 2003 showed normal alignment and slight narrowing at L5-S1. (Tr. 249).

In November 2003 and January 2004, state agency physicians reviewed the evidence and

concluded plaintiff could lift 50 pounds occasionally and 25 pounds frequently; sit, stand and walk for six hours each; could occasionally kneel, crouch, and crawl; and never climb ropes, ladders, or scaffolds. (Tr. 261-62, 265).

Plaintiff was seen at the Crossroad Health Center from November 2003 to April 2005. (Tr. 386-397). In November 2003, plaintiff reported she was working two days per week at a café. She requested a refill for her hypertension medication and a muscle relaxer for her back. She was prescribed Flexeril 10 mg. (Tr. 386). In April 2004, she was diagnosed with mechanical low back pain, hypertension, controlled, and depression, controlled. (Tr. 388). The progress notes indicate plaintiff "wants disability forms completed." The assessment portion of the progress note states, "No disability for now." (Tr. 388). A May 2004 lumbar spine MRI was normal. (Tr. 348). In August 2004, the notes reflect back flexion to 90 degrees and no significant tenderness. (Tr. 391). Plaintiff was given a trial of Voltaren 75 mg. *Id.* In September 2004, plaintiff reported that "pain is well controlled with Diclofenac [Voltaren]." (Tr. 392). Although plaintiff reported she experienced shooting pain in her legs bilaterally, she associated this pain with her monthly periods. *Id.* She was continued on Voltaren and referred to physical therapy for her back pain. (Tr. 392). In October 2004, plaintiff underwent a course of physical therapy. (Tr. 281). She was discharged less than one month later, after six visits, because she declined to continue treatment or was non-compliant (Tr. 281). At her November 2004 visit, plaintiff reported the "therapy helped." (Tr. 393). In April 2005, plaintiff reported she pulled her back getting out of a car three weeks previously. She was prescribed a back brace. (Tr. 396).

In May 2005, Dr. Roberts, plaintiff's treating physician at the Crossroads Health Center, completed a form in which he noted that plaintiff had "no significant medical findings" and

10

flexes to 90 degrees. (Tr. 383). Although Dr. Roberts reported "gets weakness in leg," he further reported that plaintiff's MRI was "normal" and examination showed "normal strength in legs." (Tr. 383). Dr. Roberts also reported "sometimes pain with bending," negative Romberg, normal station and gait, and "normal toe to heal but slow." (Tr. 384). Dr. Roberts opined that plaintiff could lift only one to five pounds; stand and walk for a total of one hour and for 30 minutes at one time; sit for four hours and for one hour at a time; and had some postural limitations. (Tr. 383-85).

### Mental Impairments

In September 2003, plaintiff presented to NORCEN Behavioral Health Systems, Inc. for an initial mental health evaluation. (Tr. 206). Plaintiff reported that she quit her job in December 2002 due to a "panic attack" and had to repay unemployment benefits she received since April 2003 because she quit without any registered due cause. (Tr. 206, 212). Plaintiff reported a two-year history of panic attacks and depression. She also reported she saw a counselor with her employer's employee assistance program but was never prescribed medications. (Tr. 206). Mental status examination revealed that plaintiff had delusions; auditory, visual, and tactile disturbances and hallucinations; constricted affect; anxious and depressed mood; and limited insight, but was otherwise normal. (Tr. 207). Plaintiff reported that she smoked three cigarettes per day and had no primary care physician. (Tr. 208). She also indicated that "[o]ne week ago, [she] got a job for two nights as a bartender." (Tr. 212). Plaintiff was diagnosed with schizo affective disorder, and assigned a Global Assessment of Functioning (GAF) score of 52, indicating moderate symptoms. (Tr. 216). She was referred for psychotherapy and medication. (Tr. 216).

11

On October 14, 2003, Dr. Berg, a psychologist, evaluated plaintiff for the state agency. (Tr. 241). Plaintiff reported that after she left her housekeeper job she worked as a mail handler for three or four weeks but was "laid off." She stated she currently worked as a short order cook two days per week, for six to six and one-half hours each day. (Tr. 242). Dr. Berg indicated plaintiff functioned in the upper part of the borderline range of intelligence, had no evidence of overt psychotic processes, appeared mildly anxious and depressed, and had adequate memory processes. (Tr. 244). Dr. Berg diagnosed anxiety and depressive disorder, and assigned a GAF of 62, indicating mild symptoms. (Tr. 244). Plaintiff had no limitation with understanding and following simple directions, had mild limitation with her ability to maintain attention and concentration and relate adequately, and mild to moderate limitation in her ability to cope with job stress. (Tr. 245).

In November 2003, and January 2004, state agency psychologists reviewed the medical evidence and concluded plaintiff did not have a severe mental impairment. (Tr. 254, 259).

In October 2003, plaintiff began a course of psychotherapy at NORCEN that initially included weekly therapy sessions through March 2004, and later bi-weekly and then monthly sessions. In November 2003, plaintiff reported that her medication did not causes drowsiness and that she was less depressed and anxious and more calm. (Tr. 228).

On December 4, 2003, plaintiff indicated she was "doing better," felt more calm, and was not hearing voices. She was assessed as "improved with meds." (Tr. 229). Plaintiff presented to the ER on December 11, 2003, claiming jitters possibly due to new medication. (Tr. 341, 343, 345). On December 16, 2003, she reported that though she was restless and "jittery," she felt much better with medication. (Tr. 231). On December 24, 2003, plaintiff reported she was

**12**

taking Seroquel with no side effects. (Tr. 232).

On December 29, 2003, plaintiff's therapist reported to the Social Security Administration that plaintiff lived with her father after her unemployment benefits ran out. (Tr. 201). The therapist indicated plaintiff had a two to three month psychotic episode with absence from work, but she failed to file papers for long-term leave. (Tr. 202). The therapist opined that plaintiff had difficulty concentrating, was easily distracted and tired, was easily discouraged and lacked motivation, and became psychotic and confused when under stress. (Tr. 204).

On January 8, 2004, plaintiff reported no side effects from her medication but was anxious due to a lack of financial resources. She reported no audio or visual hallucinations, an improved mood, and restricted affect. She was transferred to Dr. Pacita David at QCM, another mental health provider, for medical management due to a shortage of doctors at NORCEN. (Tr. 233, 364). On January 14, 2004, plaintiff's mental status examination revealed constricted affect, good eye contact, and fair to good rapport. (Tr. 365). Plaintiff was occasionally tearful and her cognitive function was grossly intact. Dr. David diagnosed a psychotic disorder, NOS and assigned a GAF of 55 to 60. Dr. David increased plaintiff's prescription for Seroquel and plaintiff was to continue with individual therapy at NORCEN. (Tr. 365). In February 2004, plaintiff displayed no overt psychosis and was improving. (Tr. 366).

In March 2004, plaintiff's mood was fine and she denied any psychotic symptoms. (Tr. 319). In April 2004, plaintiff reported that Seroquel helped her sleep. She denied any agitation, depressed mood, or psychosis. (Tr. 319, 369). Plaintiff was doing well overall, but had "moments when she feels down due to poor financial status." (Tr. 320). In May 2004, plaintiff's mood was only mildly depressed. (Tr. 321). In June 2004, plaintiff had no psychosis or

13

depression. (Tr. 323). In August 2004, her mood was normal and she had no psychosis. (Tr. 325). In September 2004, plaintiff had no psychosis and reported she slept well. (Tr. 325). Later that month plaintiff was "doing well" and had no depressive symptoms or psychosis. (Tr. 326). In October 2004, plaintiff had no depression or psychosis and a bright mood. (Tr. 327). In November 2004, plaintiff's mood was "good" and her therapy sessions were reduced to bi-monthly. (Tr. 328). That same month, Dr. David reported plaintiff's mood was stable and that she was compliant with her medications. (Tr. 373). Dr. David further reported that plaintiff had not had any breakthrough psychosis and "sleep continues to be restful." (Tr. 373). Dr. David reported in December 2004 and March 2005 that plaintiff maintained stability with no psychosis. (Tr. 376-381). In July 2005, Dr. David reported that plaintiff's mood was stable and she was compliant with her medication. (Tr. 370). Dr. David reported that plaintiff "continues to derive benefit from medication in that mood has improved, there is minimal reactivity and she has not experienced any psychotic symptoms. Sleep, appetite and energy good." (Tr. 370).

## OPINION

With her fact sheet and statement of errors, plaintiff submitted additional evidence documenting treatment for a lumbosacral sprain in March and May 2002, including physical therapy, and physical therapy in September 2004 for low back pain. Because plaintiff does not identify any specific errors with the ALJ's decision and is proceeding pro se, the Court has carefully reviewed the ALJ's decision to determine whether the ALJ's critical findings of fact were made in compliance with the applicable law and whether substantial evidence supports those findings. After a careful review of the record, the Court determines that the decision of the

14

ALJ is supported by substantial evidence and should be affirmed.

The record substantially supports the ALJ's finding that plaintiff suffers from severe impairments of chronic muscle strain/sprain, obesity, tachycardia, traumatic and degenerative joint disease with chronic low back pain, hypertension, anxiety disorder, and depressive disorder not otherwise specified. (Tr. 25). It may be argued that the ALJ should have determined plaintiff suffered from an additional severe impairment of a psychotic disorder not otherwise specified, as diagnosed by Dr. David. However, the ALJ's failure to characterize this disorder as a severe impairment is not reversible error. The ALJ adopted Dr. Berg's diagnoses of anxiety disorder and depressive disorder not otherwise specified and found these impairments to be severe. (Tr. 22). The ALJ discussed plaintiff's mental health treatment records, including Dr. David's diagnosis and treatment. (Tr. 22). Because the ALJ considered Dr. David's treatment records when determining plaintiff's residual functional capacity, including those symptoms and limitations which plaintiff characterized as being caused by such impairment (Tr. 24), any failure on the part of the ALJ to characterize this impairment as "severe" at step two of the sequential evaluation process does not constitute reversible error. *See Maziarz v. Secretary of Health and Human Services*, 837 F.2d 240, 244 (6th Cir. 1987) (when ALJ considers all impairments in remaining steps of disability determination, ALJ's failure to find additional severe impairments at step two "[does] not constitute reversible error").

The Court also finds that the ALJ's RFC finding is supported by substantial evidence. In this regard, the Court examines the ALJ's evaluation of the treating physician reports and plaintiff's credibility.

At the hearing before the ALJ, where plaintiff was represented by counsel, her attorney

15

argued that based on Dr. Roberts' RFC, plaintiff would be limited to less than sedentary work and disabled. (Tr. 68, 153). Dr. Roberts opined that plaintiff could lift only one to five pounds; stand and walk for a total of one hour and for 30 minutes at one time; sit for four hours and for one hour at a time; and had some postural limitations. (Tr. 383-85).

"In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.,* 708 F.2d 1048, 1054 (6th Cir. 1983). The weight given a treating physician's opinion on the nature and severity of impairments depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. § 404.1527(d); *Harris v. Heckler*, 756 F.2d 431 (6th Cir. 1985). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Walters*, 127 F.3d at 530. If not contradicted by any substantial evidence, a treating physician's medical opinions and diagnoses are afforded complete deference. *Harris*, 756 F.2d at 435. *See also Cohen v. Secretary of H.H.S.*, 964 F.2d 524, 528 (6th Cir. 1992). The opinion of a non-examining physician is entitled to little weight if it is contrary to the opinion of the claimant's treating physicians. *Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987). If the ALJ rejects a treating physician's opinion, the ALJ's decision must be supported by a sufficient basis which is set forth

16

in his decision. *Walter v. Commissioner*, 127 F.3d 525, 529 (6th Cir. 1997); *Shelman*, 821 F.2d at 321.

The ALJ rejected Dr. Roberts' assessment finding "it is not supported by the medical evidence of record." (Tr. 24). The ALJ pointed out that Dr. Roberts' assessment was not supported by his own report or by the objective and clinical evidence. The ALJ's decision in this respect is supported by substantial evidence.

Here, the ALJ properly articulated her reasons for discounting Dr. Roberts' opinion on the record. *See Shelman*, 821 F.2d at 321. The ALJ reasonably found that Dr. Roberts' opinion was outweighed by other substantial evidence. Dr. Roberts' own report admitted there are no significant medical findings to support his reported lifting and carrying limitations. (Tr. 24, 383). The report also acknowledged that plaintiff's MRI examination of the lumbar spine was normal and examination showed normal strength in plaintiff's legs. (Tr. 24, 383). Despite Dr. Roberts' report of limited postural activities, he also reported plaintiff had a normal gait and station, normal toe to heel testing (although slow), and a negative Romberg sign. (Tr. 24, 384). In addition, Dr. Roberts' clinical notes in April 2004 showed mechanical back pain, but "no disability for now." (Tr. 388).

Moreover, the objective and clinical evidence does not support Dr. Roberts' assessment. The ALJ cited to x-ray findings of May 2002 which showed essentially normal findings of the lumbosacral spine. (Tr. 24, 187). The ALJ also cited to spinal x-rays of October 2003 which documented normal alignment and only slight narrowing at L5-S1. (Tr. 24, 249). An MRI in May 2004 showed normal results. (Tr. 24, 348). Additionally, clinical findings showed negative straight leg raising, 1+ reflexes, and 5/5 (normal) strength. (Tr. 175). Dr. Merz's examination in

17

September 2002 noted "dramatic improvement" in plaintiff's pain with physical therapy and medication, "minimal residual tenderness and spasm," and no neurologic abnormality. (Tr. 194). Dr. Fritzhand's findings also documented an essentially normal neurologic examination, no weakness in the legs, well-preserved sensation, and only "slightly" diminished straight leg raising and range of motion. (Tr. 247, 250-53).  Dr. Fritzhand also documented no joint abnormalities, brisk reflexes, no muscle atrophy, and well-preserved grip strength. (Tr. 248, 250-53).  In addition, plaintiff's daily activities, such as cleaning, dusting, mopping, doing the dishes, shopping, doing the laundry, driving a car, and walking in the park (Tr. 40-42) are inconsistent with pain so severe as to preclude her from all work activity.

Without sufficient clinical and objective findings to support the lifting, standing, walking, and sitting restrictions imposed by Dr. Roberts, the ALJ was not bound by the treating physician's opinion. *Walters*, 127 F.3d at 530.  Because the ALJ gave a reasoned, supported evidentiary basis for rejecting Dr. Roberts' limitations, the ALJ's decision in this respect is supported by substantial evidence and is not in error.

The ALJ's physical RFC findings are substantially supported by the assessment of Dr. Fritzhand, who reported that plaintiff was capable of performing a moderate amount of ambulating, standing, bending, stooping, and lifting of heavy objects. (Tr. 248).  The ALJ's finding is further supported by the assessments of the state agency physicians whose limitations were specifically incorporated into the ALJ's residual functional capacity finding. (Tr. 23, 261-62, 265).

The ALJ's mental RFC findings are also supported by substantial evidence.  Dr. Berg assessed that plaintiff had no limitation with understanding and following simple directions, had

18

mild limitation with her ability to maintain attention and concentration, and relate adequately, and mild to moderate limitation in her ability to cope with job stress. (Tr. 245). The ALJ reasonably incorporated Dr. Berg's limitations into her RFC finding. As the ALJ also pointed out, this assessment is supported by Dr. David's records, who treated plaintiff shortly after she began psychotherapy at NORCEN. Although plaintiff's therapist opined in December 2003 that plaintiff initially had difficulty concentrating, was easily distracted and tired, was easily discouraged, lacked motivation, and became psychotic and confused when under stress (Tr. 204), Dr. David's records showed plaintiff significantly improved over the next year with medication and continued psychotherapy. (Tr. 365-381). Dr. David's records show no evidence of psychosis from January 2004 through July 2005, when Dr. David reported that plaintiff's mood was stable and improved. (Tr. 370). That same month, Dr. David reported "minimal reactivity and she has not experienced any psychotic symptoms. Sleep, appetite and energy good." (Tr. 370). The ALJ's RFC reasonably encompasses the mental limitations outlined by Dr. Berg and supported by Dr. David. (Tr. 23).

The ALJ's credibility finding is also supported by substantial evidence. In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001); *Kirk,* 667 F.2d at 538. "If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen,* 35 F.3d 1027, 1036 (6th Cir. 1994). The ALJ's credibility decision must include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the

symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual

takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the

individual receives or has received for relief of pain or other symptoms; 6) any measures other

than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat

on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any

other factors concerning the individual's functional limitations and restrictions due to pain or

other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96-70.

   In the instant case, the ALJ properly assessed plaintiff's credibility in light of the above

requirements. A review of the ALJ's decision shows the ALJ considered a variety of factors in

assessing plaintiff's credibility, including her demeanor at the hearing, reported daily activities,

and use of pain and other medications. The ALJ determined that plaintiff's "testimony with

respect to the severity and extent of her illness, pain, [and] limitations is not fully credible." (Tr.

24). The ALJ noted that despite plaintiff's allegations of a disabling condition with mental

problems, "she currently works as a short order cook, with this being a job that certainly has a

level of stress." (Tr. 24). The ALJ also considered the lack of significant findings on

examination and objective testing when assessing plaintiff's credibility. (Tr. 24). The ALJ

further considered the conservative treatment and care plaintiff received for her impairments. *Id.*

Finally, the ALJ's consideration of plaintiff's daily activities was one of a number of factors

considered in assessing her credibility in this matter. There is no evidence the ALJ

mischaracterized plaintiff's testimony, took her testimony out of context, or placed undue weight

on her daily activities in determining plaintiff's RFC. The ALJ's decision clearly reflects that

she properly considered the required factors in making her credibility determination.

Accordingly, the Court finds that substantial evidence supports the ALJ's credibility finding in this matter.

The ALJ's residual functional capacity determination, which included an evaluation of the physicians' opinions and plaintiff's credibility, is substantially supported by the record as a whole. Based on this RFC, the vocational expert testified that plaintiff could perform her past relevant work. (Tr. 65). Although the ALJ's hypothetical question to the vocational expert included the ability to lift 100 pounds occasionally, rather than 50 pounds as the ALJ ultimately found, the vocational expert reported that plaintiff's past relevant work was typically performed at the medium level of exertion. (Tr. 64, 156). Even assuming plaintiff could not perform this work as she typically did it, she could nevertheless perform it as generally performed. *See Studaway v. Sec. of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987) (in determining whether a claimant can perform his past relevant work, the Secretary may rely on the requirements of the job as the claimant performed it, or on the requirements of the job as it is generally performed in the national economy). Therefore, the record contains substantial evidence to support a conclusion that plaintiff is able to perform her past relevant work and is not disabled. This Court concludes that, for the above reasons, the ALJ's decision is supported by substantial evidence and should be affirmed.

**IT IS THEREFORE RECOMMENDED THAT** the decision of the Commissioner be **AFFIRMED** and this matter be dismissed on the docket of the Court.

Date: 2/14/08

Timothy S. Hogan
United States Magistrate Judge

21

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

CAROLYN ANGEL,
    Plaintiff

      vs                       Case No. 1:06-cv-857
                                 (Spiegel, J.; Hogan, M.J.)

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS**
**R&R**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **TEN DAYS** after being served with this Report and Recommendation ("R&R"). Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this R&R is being served by mail. That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **TEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).

22